GANDÍA, DEMANDANTE Y APELANTE, *v*. PORTO RICO FERTILIZER
COMPANY, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección Primera, en pleito sobre cobro de dividendos y
prevención de traspaso de acciones. Resolución anulando
un embargo decretado para aseguramiento de sentencia.

No. 2499.—Resuelto en marzo 24, 1922.

APELACIÓN—ASEGURAMIENTO DE LA SENTENCIA DESPUÉS DE APELADA—JURISDIC-
CIÓN.—Una corte de distrito tiene facultad para decretar el aseguramiento
de la sentencia después que la misma ha sido apelada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José de Guzmán Benítez.*

Abogados de la apelada: *Sres. C. Coll Cuchí* y *G. Cru-
zado Silva.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del
tribunal.

El 28 de octubre de 1920 la Corte de Distrito de San
Juan, Sección Primera, dictó sentencia en el pleito seguido
por Pedro Gandía contra Porto Rico Fertilizer Company,
sobre cobro de dividendos, en favor del demandante. La sen-
tencia fué apelada el 24 de noviembre siguiente y el 5 de
mayo de 1921 el demandante solicitó que la corte decretara
el aseguramiento de la dicha sentencia mediante embargo de
bienes de la demandada. Accedió la corte, decretando el em-
bargo solicitado sin fianza. La demandada entonces solicitó
la nulidad de la orden por entender ''que la corte carece de
jurisdicción para decretar dicho embargo sin fianza, por
cuanto la sentencia ha sido apelada con anterioridad al em-
bargo.'' La corte tomó bajo su consideración el caso y el
4 de junio de 1921 lo resolvió anulando el embargo decre-
tado por entender que una vez que la sentencia fué apelada,
la corte perdió enteramente su jurisdicción no ya para acor-
dar el aseguramiento sin fianza, sí que también con fianza.

Y contra la dicha resolución de 4 de junio es que se ha interpuesto el recurso que estamos considerando.

En marzo 1, 1902, la Asamblea Legislativa decretó una ley para asegurar la efectividad de sentencias, que ha sido varias veces interpretada por esta Corte Suprema. De acuerdo con la sección 3 de dicha ley, "la solicitud de aseguramiento podrá presentarse con la demanda o luego de interpuesta, en cualquier período del juicio, antes de sentencia firme." Las palabras "antes de sentencia firme" dieron lugar a dudas y el legislador el 13 de abril de 1916 enmendó la ley disponiendo entre otras cosas que: "La solicitud de aseguramiento podrá presentarse con la demanda o luego de interpuesta, en cualquier período del juicio, antes o después de la sentencia. Si el aseguramiento se solicitare después de pronunciada sentencia no se exigirá fianza."

No hay duda alguna con respecto a que después de pronunciada una sentencia cabe decretar el aseguramiento de la misma y a que si se decreta, debe serlo sin fianza. La cuestión a resolver es si por el hecho de la apelación para ante esta Corte Suprema, pierde su jurisdicción la de distrito para acordar el aseguramiento.

Decidió la corte sentenciadora la cuestión en sentido afirmativo basándose en el artículo 297 del Código de Enjuiciamiento Civil y en la sección 14 de la propia ley de aseguramiento. El apelado invoca en apoyo del criterio sustentado por la corte inferior, las resoluciones de esta Corte Suprema en los casos de *Bolívar* v. *Aldrey,* 12 D. P. R. 273; *Pescay* v. *Texidor,* 26 D. P. R. 170, y *The Specialty Shop* v. *Benítez Flores,* 29 D. P. R. 265, 268.

El caso de Bolívar, *supra,* no es aplicable. Interpretó la ley tal como estaba redactada antes de su modificación. El de Pescay, *supra,* se refiere a una situación legal distinta. Es el de la Specialty Shop, *supra,* el único que contiene un párrafo que es susceptible tal vez de interpretarse en el sentido que sostiene el apelado, pero en el mismo párrafo se

dice que no es en sus razonamientos en los que se basa la resolución de la corte, sino en que de acuerdo con la ley y la jurisprudencia no había sentencia alguna ante la corte de distrito que pudiera servir de base al aseguramiento sin prestación de fianza. Se trataba de un pleito procedente de una corte municipal.

Examinemos los preceptos de ley en que descansó la corte de distrito. El artículo 297 dispone que "Formalizada una apelación, producirá el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, o a las cuestiones comprendidas en ella, pero la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación." Y la sección 14 de la ley sobre aseguramiento prescribe, en resumen, que todas las cuestiones que se promuevan se ventilarán separadamente del pleito principal y que todas las resoluciones que se dicten serán ejecutorias desde luego.

¿Está comprendido en la sentencia su aseguramiento por medio de embargo? A nuestro juicio no lo está y la sección 14 de la ley especial invocada por el juez de distrito en vez de apoyar su criterio demuestra que el aseguramiento es un procedimiento independiente que se tramita sin interrumpir en modo alguno y sin intervenir en nada con el pleito principal.

A virtud de una apelación interpuesta contra una sentencia pronunciada por una corte de distrito, la sentencia queda desde luego sujeta a ser revocada, modificada o confirmada por la Corte Suprema, pero no destruída como sucede en el caso de las apelaciones interpuestas para ante las cortes de distrito contra las sentencias pronunciadas por las cortes municipales. Es más, la presunción de justa, acompaña a la sentencia hasta que sea revocada por la Corte Suprema.

Siendo esto así, no comprendemos por qué una parte que

ha obtenido una sentencia a su favor que se presume justa no obstante la apelación, no pueda hacer uso del privilegio que le concede una ley que le permite asegurar la efectividad de esa sentencia mediante embargo de bienes de la parte contra la cual se dictara.

Al decretar la ley de 1916 que el aseguramiento podría solicitarse lo mismo antes que después de la sentencia, no hace distinción alguna. Si se interpretara la ley como pretende la parte apelada podría .quedar anulada a voluntad de la parte contra quien se pronuncia la sentencia. Bastaría que dicha parte archivara un simple escrito de apelación inmediatamente·después de dictada la sentencia para impedir que la parte victoriosa obtuviera el aseguramiento de la misma.

En una reciente decisión de la Corte Suprema de los Estados Unidos encontramos el párrafo que sigue que ilustra la cuestión envuelta en este caso. Dice así:

"El decreto enmendatario de febrero fué obtenido mucho después de concedidas las apelaciones contra el decreto de Agosto y cuando la corte tenía muy limitadas facultades sobre el litigio. 'Una regla general en todos los casos (sujeta, sinembargo, a algunas condiciones) es que una apelación suspende la facultad de la corte inferior de seguir actuando en el caso.' Indudablemente, después de la apelación la corte sentenciadora puede, si los fines de justicia lo exigen, preservar el *status quo* hasta que la corte de apelación dicte su decisión. *Hovey* v. *McDonald*, 109 U. S. 150, 157. Pero no puede finalmente adjudicar sobre derechos sustanciales directamente envueltos en la apelación. *Merrimack River Savings Bank* v. *Clay Center*, 219 U. S. 527, 534. Véase *First National Bank* v. *State Bank*, 131 Fed. 430. El resultado exacto del decreto de febrero es algo dudoso, pero podemos considerarlo como una tentativa para preservar el *status quo* de modo que esta corte pueda final y completamente disponer del asunto en·su totalidad. Así interpretado el decreto (No. 288) estaba dentro de la discreción de la corte y como no hubo abuso de esa discreción debe ser confirmado." Newton v. Consolidated Gas Company of New York, resuelto por la Corte Suprema de los Estados Unidos en marzo 6, 1922.

Esta idea de la preservación del *status quo* se expresa en una decisión de la Corte Suprema de Pennsylvania, del siguiente modo:

"Una apelación debidamente establecida contra un decreto final en equidad, bajo fianza aprobada, de acuerdo con la orden de la corte, en relación con la remoción de los autos a la Corte Suprema, surte el efecto de suspender los procedimientos para ejecutar el decreto (*supersedeas*); pero la corte inferior conserva, sin embargo, el derecho (concurrentemente con la Corte Suprema) de gobernar los actos de las partes respectivas, en tanto sea necesario para preservar el *status in quo* de cada una tal como existía al tiempo de dictarse el decreto; y a ese fin, si necesario fuere, el de expedir una orden de embargo." *New Brighton, &c., R. R. Co.* v. *The Pittsburgh, &c., R. R. Co.,* 105 Pa. 13.

Asegurar una sentencia no es ejecutarla y en cierto modo es preservar el *status quo* que existía en el momento de dictarla. Generalmente las leyes de procedimientos exigen la prestación de una fianza por los apelantes que garantice el derecho reconocido a la parte a cuyo favor se dictó la sentencia y es cuando tal fianza se presta que se suspende la ejecución de la sentencia. En Puerto Rico basta la simple presentación del escrito de apelación para suspender la ejecución. Probablemente fué este el motivo o uno de los motivos que tuvo el legislador para enmendar la ley sobre aseguramiento en la forma en que lo hizo en 1916.

Por virtud de todo lo expuesto opinamos que debe declararse con lugar el recurso y revocarse la orden apelada quedando subsistente la que se anuló por ella, todo sin especial condenación de costas.

> *Revocada la resolución apelada dejando subsistente la orden de mayo 6, 1921, por la cual se decretó el aseguramiento de la sentencia.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.