Ana María Sugar Co., Inc., demandante y apelante, *v.* Antonio Santos, demandado, y South Porto Rico Sugar Co. of Porto Rico, interventora y apelada.

No. 6546.—*Sometido:* Abril 3, 1934. *Resuelto:* Febrero 12, 1935.

*J. Alemañy Sosa,* abogado de la apelante; *Miguel A. García Méndez,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La "Ana María Sugar Co. Inc.," una corporación constituída con arreglo a las leyes de Puerto Rico, interpuso en la Corte de Distrito de Mayagüez una demanda contra Antonio Santos en solicitud de que se declarara rescindido el contrato de arrendamiento de dos fincas rústicas existente entre la demandante y el demandado, condenándose a éste a pagarle $1,859.94 por concepto de cánones vencidos y no satisfechos, con más los intereses de mora correspondientes y las costas. Emplazado el demandado, no contestó, anotándose su rebeldía el 7 de marzo de 1932.

Así las cosas, el 15 del propio mes de marzo, la "South Porto Rico Sugar Co. of Porto Rico," alegando que se habían embargado las cañas de las fincas arrendadas para el pago de los cánones reclamados por la demandante y que ella era dueña de un crédito refaccionario preferente, solicitó

intervenir en el pleito, y resuelta favorablemente su solicitud, quedó radicada su demanda de intervención el 28 de marzo de 1932.

Al día siguiente ambas partes, la demandante y la interventora, sometieron su pleito a la decisión de la corte por medio de una estipulación que en lo pertinente dice:

"I. Que las partes comparecientes están conformes y de acuerdo en cuanto a las materias de hecho que más adelante se expondrán y difieren solamente en cuanto al efecto de dichos hechos sobre las pretensiones de las partes de cobrarse cada una con preferencia a la otra de los frutos que existen en las fincas que se describen en la demanda en este caso, el crédito que por cánones de arrendamiento de dichas fincas tiene la demandante Ana María Sugar Co., Inc. y el crédito refaccionario que sobre dichos frutos tiene la interventora, South Porto Rico Sugar Company of Porto Rico.

"II. Que para dirimir dicha diferencia de criterio sobre la preferencia del crédito de cada una de las partes comparecientes, éstas han acordado someter las cuestiones de derecho a la resolución de esta Hon. Corte, mediante audiencia de las partes comparecientes en la fecha que la Corte acuerde designar, de acuerdo con las partes.

"III. Que las cuestiones de hecho envueltas en este caso, y en las cuales las partes comparecientes están conformes, son las siguientes:

"1. Que por escritura otorgada en esta ciudad en 29 de abril de 1929, ante el Notario Ledo. J. Alemañy Sosa, con el número 13, por Ana María Sugar Co., Inc. y don Antonio Santos, que son la demandante y el demandado, respectivamente, en esta acción, Ana María Sugar Co., Inc. dió en arrendamiento a don Antonio Santos los bienes de su propiedad que se describen en el hecho 2 de la demanda, por un término de cinco años a contar desde el día 1o. de mayo de 1929 y por el precio de $1,200 anuales, pagaderos por semestres vencidos.

"2. Que en dicha escritura de arrendamiento se convino que las mejoras existentes en las fincas arrendadas al terminarse el arrendamiento quedarían a beneficio de la arrendadora, sin tener que pagar nada por ellas y como una parte de la consideración de dicho contrato.

"3. Que desde el día 9 de julio de 1929 la interventora, South Porto Rico Sugar Company of Porto Rico, inscribió en el Registro de Contratos Agrícolas del municipio de Mayagüez, en el Registro

de la Propiedad de esta ciudad, un contrato de refacción agrícola y molienda de cañas, celebrado entre el demandado don Antonio Santos, como arrendatario, y la South Porto Rico Sugar Company of Porto Rico, como acreedora refaccionaria, sobre las fincas que se describen con las letras A y B en el hecho 2°. de la demanda, comprendiendo las zafras de 1931–1935, ambas inclusive; actuando el arrendatario, y en esta acción demandado, Señor Santos, en el otorgamiento de dicho contrato como poseedor a título de arrendamiento de dichas fincas, que son de la propiedad de la demandante, Ana María Sugar Co., Inc.

"4. Que el día 18 de febrero de 1932 la demandante Ana María Sugar Co., Inc., notificó por escrito a la interventora, South Porto Rico Sugar Co. of Porto Rico, de que el arrendatario, don Antonio Santos, estaba adeudando los cánones de arrendamiento de las fincas . . . por carta . . ." Se transcribe íntegra la carta. En parte dice:

" ' . . . En su consecuencia y en representación de mi expresado cliente, me dirijo a Uds. requiriéndoles de pago de las sumas anteriormente especificadas, adeudadas por el Sr. Santos por cánones de arrendamiento de dichas fincas y contribuciones vencidas y no satisfechas, a los fines de la Ley sobre Molienda de Cañas y Refacción Agrícola actualmente en vigor; previniéndoles que de no hacer Uds. efectiva dichas sumas a vuelta de correo, Ana María Sugar Co., Inc. procederá a establecer su reclamación en la Corte para cobrarse de los frutos existentes en dichas fincas los arrendamientos y las contribuciones adeudadas por el Sr. Santos. . . . '

"5. Que el día 19 de febrero de 1932 la demandante, Ana María Sugar Co. Inc. radicó en esta Hon. Corte de Distrito una demanda de desahucio contra el aquí demandado, Don Antonio Santos, de las fincas que habían sido objeto del expresado arrendamiento, por falta de pago de los mismos cánones de arrendamiento que se le había notificado por Ana María Sugar Co., Inc. a South Porto Rico Sugar Company of Porto Rico que dicho arrendatario, don Antonio Santos, estaba adeudando; y el día 19 de febrero de 1932 la aquí demandante Ana María Sugar Co., Inc. radicó en este caso su demanda contra el demandado Antonio Santos, sobre rescisión del expresado contrato de arrendamiento y en cobro de dichos cánones de arrendamiento vencidos y no satisfechos.

"6. Que el día 19 de febrero de 1932, y en este mismo caso sobre rescisión de contrato y cobro de cánones de arrendamiento vencidos, la demandante, Ana María Sugar Co., Inc. solicitó y obtuvo de esta Hon. Corte se decretara el embargo de bienes del demandado An-

tonio Santos, en aseguramiento de la efectividad de la sentencia que pudiera recaer en el mismo, en cantidad bastante a cubrir la suma de $1,859.94 de principal, por concepto de cánones de arrendamiento vencidos y no satisfechos y de contribuciones de las fincas arrendadas por las tres últimas anualidades, y de un crédito adicional de $600.00 para intereses de mora, costas y honorarios de abogado; y que dicho embargo se llevó a efecto por el Márshal de esta Corte el día 19 de febrero de 1932, a indicación de la demandante, Ana María Sugar Co. Inc., sobre todas las cañas dulces de azúcar propias para ser cortadas y molidas durante la presente zafra de 1931–1932, y todas las cañas nuevas y retoños propios para ser cortados y molidos durante la próxima zafra de 1932–1933, propiedad del demandado don Antonio Santos, y que se encontraban actualmente sembrados y en cultivo en las fincas arrendadas descritas en la demanda; nombrándose por esta Hon. Corte Depositario de dichas cañas a don Félix Cesaní, quien tomó posesión de su cargo el día 19 de febrero de 1932.

"7. Que el día 27 de febrero de 1932 la interventora, South Porto Rico Sugar Company of Porto Rico, por conducto de su abogado, Lcdo. Miguel A. García Méndez, contestó la carta que le dirigiera Ana María Sugar Co., Inc. en febrero 18, 1932, por conducto de su abogado, Lcdo. J. Alemañy Sosa, en los términos que aparecen a continuación:-" Se transcribe íntegra la carta que en parte dice:

" ' . . . No dudo que te habrás dado cuenta perfecta de que South Porto Rico Sugar Co., en su carácter de acreedora refaccionaria no puede quedar perjudicada por la acción de cobro ni de desahucio que tú prosigas contra el señor Santos, porque, con relación a las cañas sembradas en la finca arrendada al último, el crédito motivado por el contrato agrícola que tiene South Porto Rico Sugar Co. debidamente inscrito en el Registro, goza de preferencia sobre el de las rentas de la finca de tu representada. Aún cuando ustedes tomasen posesión de la propiedad, Ana María Sugar Company Inc. debe cumplir el contrato de refacción inscrito en lo que a las cañas contratadas durante el término de dicho contrato respecta para abonar a las cantidades anticipadas por South Porto Rico Sugar Co. por tal concepto. Naturalmente que yo interpreté tu carta desde un principio más bien como una advertencia a South Porto Rico de la falta de pago del arrendatario, por si la primera hubiere decidido continuar con el arrendamiento, comprendiendo de antemano que tú aceptas ella no puede ser culpable de que tu representada no exigiese al señor Santos alguna garantía para aseguramiento del pago de los cánones vencidos. . . . . . . '

"8. Que el día 7 de marzo de 1932 se celebró la vista del juicio de desahucio radicado por la demandante Ana María Sugar Co. Inc. contra el demandado Antonio Santos, de las expresadas fincas objeto del arrendamiento, por falta de pago de los cánones de arrendamiento vencidos que se han expresado anteriormente, y en la misma fecha esta Hon. Corte dictó sentencia declarando con lugar la demanda y decretando el desahucio y lanzamiento del demandado de dichas fincas, y que inmediatamente después de dicha sentencia, y a virtud del desalojo y abandono voluntario por parte del demandado don Antonio Santos de las fincas objeto del desahucio, la demandante Ana María Sugar Co., Inc. tomó posesión material de las mismas y desde entonces se encuentra en posesión de ellas.

"9. Que el día 15 de marzo de 1932 la interventora, South Porto Rico Sugar Co. of Porto Rico, radicó en este caso una moción y una demanda de intervención, alegando en ésta que las cañas que se encuentran actualmente sembradas en las fincas descritas con las letras A y B en la demanda, tanto las que están propias para ser cortadas durante la presente zafra como las que corresponden a subsiguientes cosechas, fueron sembradas y cultivadas por el arrendatario de dichas fincas, don Antonio Santos, con dinero suministrado por la interventora, South Porto Rico Sugar Co. of Porto Rico, de acuerdo con las estipulaciones del contrato de refacción agrícola y molienda de cañas existente entre dicho arrendatario, don Antonio Santos, y la interventora, South Porto Rico Sugar Co. of Porto Rico; y que del dinero anticipado por la interventora, South Porto Rico Sugar Co. of P. R., al expresado demandado, don Antonio Santos, con motivo de dicho contrato de refacción agrícola y molienda de cañas, el expresado demandado, don Antonio Santos, adeuda a la interventora, South Porto Rico Sugar Co. of P. R., la suma de $3,214.88, según liquidación practicada el 29 de febrero del cursante año de 1932, sin contar intereses; y que, en su consecuencia, las cañas comprendidas en el contrato inscrito a favor de la interventora y que están sembradas en las fincas arrendadas por el demandado a la demandante, son propiedad de la primera por virtud del referido contrato inscrito a favor de dicha interventora, y solicita se deje sin efecto el embargo trabado sobre dichos frutos por la demandante Ana María Sugar Co., Inc. y se anule el nombramiento de Depositario de los mismos y que se decreten las órdenes y decretos que sean procedentes para que la interventora no sea obstaculizada, ni sus agentes ni representantes, en el corte y verificaciones de las consiguientes labores en las referidas plantaciones, ni por la demandante ni por persona otra alguna.

"10. Que la demandante, Ana María Sugar Co., Inc., no tiene oposición a que se dé por radicada la demanda de intervención de la interventora, South Porto Rico Sugar Co. of P. R., sobre prelación de crédito; pero queda estipulado que las partes dan por negadas y contestadas todas las alegaciones de dicha demanda que sean contrarias a la contención de la demandante intervenida por esta estipulación."

Sobre el corte de la caña, se estipuló además lo que sigue:

"Mientras este asunto queda substanciado definitivamente, en cuanto a las cañas que existen en las fincas objeto del arrendamiento y que están propias para corte durante la presente zafra, las partes de mutuo acuerdo convienen que se proceda a su corte por el Depositario nombrado por esta Hon. Corte, don Félix Cesaní, con intervención de la interventora, South Porto Rico Sugar Co. of Porto Rico, que será notificada de ello, y que dichas cañas sean molidas por dicho Depositario en la factoría azucarera de la South Porto Rico Sugar Co., mediante la estipulación de que el importe de las liquidaciones mensuales de dichas cañas, después de descontar los anticipos para corte y tiro de las mismas, será depositado en la Secretaría de esta Hon. Corte, por el expresado Depositario para que el importe total de las mismas sea adjudicado de acuerdo con las resultas de esta acción."

Tomó la corte bajo su consideración el caso y lo resolvió en contra de la demandante por sentencia de octubre 9, 1933, que razonó, en parte, como sigue:

"          .        .        .        .        .        .        .

"La demandante sostiene que si bien el contrato de refacción agrícola y molienda de cañas es preferente, las secciones aplicables de la ley de 10 de marzo de 1910, tales como quedaron enmendadas en 1925, reconocen como único derecho del acreedor refaccionario, cuando el arrendatario haya faltado a sus obligaciones para con el dueño de las fincas, cumplir, al tener conocimiento de ello, tales obligaciones por cuenta del deudor, con cargo al crédito refaccionario para poder ejercer su derecho preferente. La interventora asevera en contrario que el derecho preferente que tiene sobre los frutos de las fincas a virtud del contrato verificado con el arrendatario demandado Antonio Santos, es válido y ejecutable contra la arrendadora Ana María Sugar Company, Inc., por mandato de la ley de marzo 10 de 1910, tal cual está en vigor, y de las disposiciones del

Código Civil vigente en materia de clasificación y prelación de créditos, y que el gravamen preferente sobre dichos frutos no queda destruído ni preterido, aún cuando se haya dictado sentencia a favor de la demandante por falta de pago de los cánones de arrendamiento, porque a su juicio el cambio de posesión constituiría simplemente un traspaso por operación de ley.

"Consideradas cuidadosamente las alegaciones todas y argumentaciones de las partes en litigio, esta Corte es de opinión que debe resolver y RESUELVE que, de acuerdo con la ley aplicable a esta materia y en vigor hoy en Puerto Rico, el crédito de refacción agrícola y molienda de cañas debidamente inscrito en el Registro de la Propiedad a favor de la interventora South Porto Rico Sugar Company of Porto Rico es preferente a y tiene prelación en el cobro sobre el crédito por las rentas adeudadas a la demandante Ana María Sugar Company, Inc., en cuanto a los frutos de las fincas que fueron objeto de la refacción, y que en la cosecha de 1932, fueron recolectados por estipulación de las partes, depositándose su importe en la Secretaría de esta Corte, sujeto al resultado de esta acción por el depositario que por esta Corte fué nombrado a virtud de la estipulación de las partes a tal objeto.

"El artículo 1826 del Código Civil de Puerto Rico (Compilación de 1930) en lo pertinente reza como sigue:

" 'Los créditos que gozan de preferencia con relación a determinados bienes muebles, excluyen a todos los demás hasta donde alcance el valor del mueble a que la preferencia se refiere.'

" 'Si concurren dos o más respecto a determinados muebles, se observarán en cuanto a la prelación para su pago, las reglas siguientes:

" '3. Los créditos por anticipo de semillas, gastos de cultivo y recolección, serán preferidos a los alquileres y rentas sobre los frutos de la cosecha para que aquéllos sirvieron.'

"Como se ve, además de la preferencia en el orden de los créditos que a la interventora conceden los artículos 1824 y anteriores del Código Civil, el de la interventora goza de prelación cuando concurre el crédito de la arrendadora demandante en este caso a cobrar los alquileres y rentas sobre los frutos de la cosecha.

"También es de aplicación el artículo 1827 del mismo Código, porque a juicio de esta Corte, el valor a que la preferencia se refiere en el presente caso está informado por la suma de $476.33 depositados en Corte, y el crédito de la interventora excluye a todos los demás en el cobro de dicha suma, por no sobrepasar éste el im-

porte del crédito preferente adeudado, cuyo saldo insoluto asciende a $3,214.88, e intereses.

"La sección 4 de la ley de marzo 10 de 1910 sobre contratos de refacción agrícola y molienda de cañas, enmendada por la ley número 66 de agosto primero de 1925 (pág. 349) es clara. La interventora no ha optado en este caso por continuar disfrutando de las subsiguientes cosechas de las fincas arrendadas, para obtener lo cual podría subrogarse en las obligaciones del deudor señor Santos para con la demandante Ana María Sugar Co., Inc., a tenor de lo que dispone el párrafo segundo de la sección tercera de la misma ley, sino que optó por pedir a la demandante que le permitiese recolectar y percibir los frutos pendientes de corte en la cosecha de 1932 y optó por sostener su derecho a ser resarcida en el valor de los frutos recolectados hasta donde alcanzase el montante del crédito adeudádole, con lo cual, de hecho, sólo cobró una suma menor de una octava parte de lo adeudado a dicha interventora por el dinero facilitado al demandado para levantar dicha cosecha de 1932. ."

No conforme la demandante interpuso el presente recurso de apelación señalando en su alegato la comisión de tres errores que estudiaremos conjuntamente por envolver a nuestro juicio una sola cuestión, a saber: ¿Cuál de los créditos es preferente, el de la demandante o el de la interventora?

■■■ Está admitido que la demandante es la dueña de las fincas de que se trata; que Antonio Santos se las arrendó y dejó de cumplir lo pactado, motivo por el cual las fincas volvieron a la posesión material de la demandante debiéndole Santos por cánones no satisfechos más de mil dólares; que Santos, vigente el arrendamiento, celebró un contrato de refacción y molienda de cañas con la interventora a los efectos de cultivar como cultivó en las fincas arrendadas cañas de azúcar, quedando a deberle una suma también mayor de mil dólares; que el contrato de refacción se inscribió en el Registro el 9 de julio de 1929; que la demandante notificó a la interventora el 18 de febrero de 1932 la falta de cumplimiento del contrato de arrendamiento por parte de Santos y la interventora rehusó cumplirlo por sí misma, y que molidas las cañas existentes en las fincas cuando la demandante tomó

posesión de ellas, produjeron una suma menor de mil dólares que se encuentra depositada en la corte de distrito.

La demandante y la interventora sostienen cada una que tienen derecho preferente a cobrar sus créditos del producto de las cañas, o sea, del de los frutos cultivados en las fincas a virtud del contrato de refacción. Sometido el conflicto de derechos a la decisión de la corte de distrito, fué resuelto en favor de la interventora. La demandante pide ahora a esta Corte Suprema que revoque la sentencia de la corte de distrito, resolviendo el conflicto en favor suyo.

Procederemos al examen de la ley especial aplicable, o sea, la Ley sobre contratos de refacción agrícola y molienda de cañas de 1910, tal como ha sido enmendada. Código Civil, página 402 y siguientes de la edición de 1930.

El contrato de refacción agrícola puede celebrarse de acuerdo con los términos expresos de esa ley no sólo con el dueño de una finca rústica si que también con el que la tenga arrendada. "Cualquier terrateniente," dice su sección 3ª, "o cualquier persona natural o jurídica, a título de dueña, poseedora, arrendataria, o usufructuaria de fincas rústicas o de edificios y maquinarias dedicados a usos agrícolas o industriales en relación con el cultivo o la manufactura de cualquier producto agrícola, podrá verificar con terceras personas el contrato de refacción agrícola definido en la sección primera de esta ley." Y luego agrega que: "En caso de que el arrendatario o usufructuario por cualquier título no cumpla sus obligaciones para con el dueño o representante de la propiedad, el acreedor refaccionario podrá, al tener conocimiento de ello, cumplir tales obligaciones por cuenta del deudor y con cargo al crédito de refacción agrícola."

Y la demandante sostiene que no habiéndose acogido la interventora a esa única oportunidad que le concedía la ley, no tiene derecho preferente alguno a resarcirse de lo que se le deba como consecuencia del contrato de refacción, con los frutos de las fincas refaccionadas.

La interventora insiste en que no obstante no haberse colocado en el lugar del arrendatario satisfaciendo ella misma los cánones que el arrendatario dejó de pagar, tiene el derecho preferente al de la demandante sobre el producto de los frutos que le reconocen de consuno la ley especial sobre la materia y el Código Civil.

En efecto, la sección 4 de la ley dispone que "el crédito de refacción agrícola desde la fecha de su presentación en el Registro . . . tendrá preferencia a los créditos posteriores de cualquier otra naturaleza, excepción hecha de los créditos por contribuciones a favor de El Pueblo de Puerto Rico . . . durante los años comprendidos en el contrato . . ."

No hay duda alguna de que lo prescrito en la sección cuarta guarda estrecha relación con lo dispuesto en la tercera. A nuestro juicio para que la preferencia subsista en toda su integridad durante todo el término del contrato, es necesario que si el arrendatario deja de cumplir, cumpla por él su acreedor refaccionario, pero eso no quiere decir que el acreedor refaccionario pierda en absoluto su preferencia sobre los frutos existentes en la finca en el momento en que termine o se declare rescindido el arrendamiento.

La situación que surge en tal caso no está prevista expresamente en la ley, y debe resolverse por tanto interpretando todas las disposiciones de la misma y los preceptos del Código Civil sobre la materia que fueron invocados por la interventora desde un principio y aplicados por la Corte sentenciadora al rendir su decisión.

Prescindiendo de lo resuelto por la Corte de Circuito de Apelaciones del Primer Circuito en el caso de *Molina* v. *Muñoz*, 31 F. (2d) 727, en cuanto a la aplicabilidad a un caso como el presente de lo dispuesto en la sección octava de la ley que de aplicarse literalmente bastaría para confirmar la sentencia recurrida, por entender que en dicho caso el hecho predominante fué el de que el acreedor finalmente se colocó en el lugar del arrendatario quedando en tal virtud en todo su vigor el contrato de arrendamiento, no puede ne-

garse que el espíritu que predomina en todo el estatuto es el de asegurar con los frutos el derecho del que los hizo posibles refaccionando al sembrador preferentemente a todos los demás acreedores del mismo, con la única excepción que establece en su sección tercera. Y tampoco puede negarse que de modo terminante el legislador en el Código Civil ha prescrito que gozan de preferencia los créditos por anticipo de semillas y gastos de cultivo y recolección, a los créditos por alquileres y rentas sobre los frutos de la cosecha para que aquéllos sirvieron. Artículo 1826 del Código Civil, Ed. 1930.

Parece conveniente transcribir la sección octava de la ley y la parte de la opinión de la Corte de Circuito que la interpreta aplicándola al caso de un contrato refaccionario verificado por un arrendatario cuando la finca por virtud de desahucio del arrendatario vuelve a la posesión material del arrendador.

La sección 8ª. dice:

"Las anotaciones y notas marginales practicadas en el registro de contratos agrícolas, perjudicarán y obligarán a tercero, desde la fecha de presentación de los documentos correspondientes. Si estando vigente el gravamen, los frutos gravados fueren enajenados por el deudor a una tercera persona, el acreedor refaccionario tendrá el derecho de obtener de ésta la entrega de los mismos o el producto de la venta en el caso de que la devolución fuere imposible.

"Si después del registro de un contrato de refacción y molienda de cañas, las cañas objeto del mismo o cualquier interés en ellas, o las factorías o centrales en que dichas cañas hayan de molerse, fueren traspasadas por acto voluntario o por ministerio de la ley, el adquirente estará obligado a cumplir todas las obligaciones del contrato y será responsable de la falta del cumplimiento del mismo, en igual modo y con la misma extensión que las partes contratantes; bien entendido que ningún traspaso relevará a los contratantes de sus obligaciones o responsabilidades en el contrato."

Y la parte de la opinión es como sigue:

"No se sostiene ni podría sostenerse que la cláusula 4 del contrato de arrendamiento prohibía a Muñoz constituir un gravamen sobre sus

cosechas; por consiguiente Molina adquirió en noviembre de 1927 un gravamen cuya validez se reconoce. La contención es y debe ser que Lebrón, con su demanda de evicción, destruyó tal gravamen. Esto no puede ser así; la sección 8, supra, es aplicable. El resultado de tal litigio fué simplemente traspasar a Lebrón por 'ministerio de ley', los bienes cedidos en arrendamiento y (según sostiene) 'las cañas objeto del contrato,' dejándolo pues, sujeto a la disposición de que 'el adquirente estará obligado a cumplir todas las obligaciones del contrato' impuestas a Muñoz. El resolver lo contrario, conforme dijo la Corte inferior, sería anular el fin claro de la ley; así interpretada, de casi nada o de nada serviría la misma.'' Molina v. Muñoz, 31 F. (2d) 727, 729.

La cuestión se simplifica al responderse la siguiente pregunta: ¿Quién es en este caso de autos el dueño de la cosecha de cañas que estaba pendiente de corte en las fincas arrendadas por Santos al tiempo de la rescisión del contrato de arrendamiento y que molida que fué produjo la cantidad que se encuentra depositada en la corte de distrito? ¿Lo es el propio Santos, o la demandante, dueña de las fincas?

La demandante y apelante parece dar por sentado en su alegato sin discutirlo siquiera que no habiéndola reclamado Santos era suya la cosecha, y a nuestro juicio no es así. Las cañas fueron sembradas por Santos, el arrendatario. Era él el dueño de las mismas y como tal pudo gravarlas como las gravó a favor de su acreedor refaccionario o sea de la interventora en el presente caso, gravamen necesariamente conocido por la demandante a virtud de su inscripción en el registro.

No importa que en el contrato de arrendamiento se prescribiera que las mejoras hechas por el arrendatario en las fincas arrendadas quedarían a beneficio del arrendador al finalizar el contrato. En el caso de *Santiago* v. *Berlingeri*, 38 D.P.R. 577, 579, 581, esta corte se expresó como sigue:

''Por el segundo señalamiento se sostiene que la corte erró al no reconocer que la cláusula quinta de la escritura de arrendamiento que se transcribió en la materia nueva de la contestación, impide toda reclamación al demandante.

''La cláusula es clara. Se pactó que las mejoras que se introdu-

jeran en la finca arrendada quedarían a beneficio del arrendador a la terminación del contrato, esto es, a beneficio del demandado en este pleito.

"La cuestión es si las plantaciones de cañas tienen o no el carácter de mejoras del predio arrendado. Si no lo tienen, entonces es evidente, de acuerdo con la ley y la jurisprudencia, que son frutos de siembras del arrendatario que éste tiene derecho a recoger, o a que se le pague su importe, al terminarse el arriendo. Artículos 1480 y 1481 del Código Civil; sección 18 de la Ley de Desahucio, Comp. 1911, p. 339; Nevares Hermanos v. Corte de Distrito, 36 D. P.R. 357, 363.

"Dentro del concepto general de la palabra mejora cualquier siembra que aumente el valor de la finca, podría considerarse que lo es. Pero dentro de su concepto jurídico, no. El plantío de árboles y de viñas lleva envuelta una idea de permanencia, de larga duración, que no existe en las siembras que se cosechan por meses, o por años. En terrenos de extraordinaria fertilidad una plantación de cañas puede durar muchos años, pero no es ése el caso general. Sería distinto si se tratara de obras permanentes hechas con motivo de las siembras de cañas, pero aquí sólo se trata de los frutos de la plantación."

Que la propia demandante no confió únicamente en su contrato para hacer suyas las cañas existentes en sus fincas al tiempo de la rescisión, lo demuestra el hecho de que al pedir la rescisión y el pago de lo que se le debía, solicitó el embargo de dichas cañas para asegurar la efectividad de la sentencia que pudiera dictarse, siendo entonces que surgió la reclamación de su derecho preferente por parte de la interventora de acuerdo con su contrato de refacción y con lo prescrito en el Código Civil sobre preferencia de créditos.

En la propia ley sobre contratos de refacción al regularse el caso de la venta en pública subasta de una finca cuyos frutos garanticen un crédito refaccionario, se hace referencia a otro precepto del Código Civil que arroja luz sobre el verdadero pensamiento del legislador, y se da la pauta que debe seguirse para resolver en justicia y en ley el conflicto de derechos que surge en casos como el presente.

El precepto del Código a que se hace referencia está contenido en su artículo 290, que forma parte del Capítulo dedicado al derecho de accesión y de la sección que especialmente trata del derecho de accesión con respecto al producto de los bienes.   Dice:

"El que percibe los frutos tiene la obligación de abonar los gastos hechos por un tercero para su producción, recolección y conservación."

Y la pauta se traza como sigue:

"En consonancia con lo dispuesto en el artículo 290 del código civil, el adquirente en pública subasta de una finca cuyos frutos estén gravados con un crédito refaccionario anotado en el registro de la propiedad, o en el especial dispuesto en esta ley, ora se haya verificado la subasta en una acción ordinaria o en procedimiento para el cobro de una hipoteca inscrita con posterioridad al crédito refaccionario, o con anterioridad a éste pero constituída con posterioridad a la vigencia de esta ley, deberá optar entre permitir al acreedor refaccionario o al primero de éstos, si fueren varios, que recolecte y perciba los frutos pendientes sujetos al crédito refaccionario y realice todas las operaciones de cultivo y preparatorias a la recolección, o resarcir a dicho acreedor refaccionario el valor en tasación de los frutos al tiempo de posesionarse de ellos, hasta el montante del crédito refaccionario adeudado, no excediendo del que se hubiere consignado en la anotación.   En este último caso se procederá a la tasación como si se tratare de ejecutar una sentencia de desahucio contra un demandado que reclamare mejoras, labores y plantíos." Párrafo tercero de la sección cuarta de la ley sobre contratos de refacción agrícola de 1910 tal como fué enmendada en agosto 1, 1925.

*Por virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.